IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DORYAL PERRY, individually and on behalf all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> L&J TRANSPORTATION COMPANIES, INC. <br><br> Defendant. | Civil Action No. _____ |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**I.   INTRODUCTION**

1. This is an action brought on behalf of current and former delivery drivers challenging Defendant L&J Transportation Companies, Inc. ("L&J" or "Defendant") unlawful practices. Plaintiff Doryal Perry ("Plaintiff") contends that, although he and other delivery drivers were classified by Defendant as independent contractors, they were, in fact, employees of Defendant.

2. Plaintiff alleges that, as a result of Defendant's policies, illegal deductions were made from his and other delivery drivers' wages, in violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 et seq.. Plaintiff further alleges that, as a result of Defendant's policies, he and other delivery drivers were not paid minimum wage for all hours worked in violation of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 et seq.. Plaintiff brings these claims, under Fed. R. Civ. P. 23, on behalf of a class of similarly situated individuals who worked as delivery drivers for L&J in Pennsylvania between April 14, 2021 and the present.

3. In addition, Plaintiff alleges that, as a result of Defendant's policies, and the

1

deductions made from Plaintiff's and other delivery drivers' pay, Plaintiff and other delivery drivers received less than the minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206.

4.  Plaintiff also seeks to represent, under Fed. R. Civ. P. 23, a class of similarly situated drivers who worked as delivery drivers for L&J and who entered into a lease agreement with L&J at any time between April 14, 2020 and the present. Plaintiff alleges that L&J's unlawful practices described in this complaint are in violation of 49 U.S.C. § 14102 and its regulations, referred to hereinafter as the Truth-in-Leasing regulations or TIL Regulations.

## II. JURISDICTION AND VENUE

6.  This Court has federal question jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. §216(b) and Plaintiff's Truth-in- Leasing claims under 28 U.S.C. § 1331.

7.  This Court has supplemental jurisdiction over Plaintiff's claims under the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims over which this Court possesses original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution.

8.  The Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Taken individually, Plaintiff's claims exceed $75,000 and Plaintiffs' class claims in total exceed $5 million.

9.  The Court has personal jurisdiction over Defendant L&J because it is registered with the Pennsylvania Secretary of State, it does business in the State of Pennsylvania, and it has expressly consented to personal jurisdiction in the State of Pennsylvania and this judicial district.

10. The Court has personal jurisdiction over Plaintiff and the putative class members because they have worked in Pennsylvania for a Pennsylvania employer.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

### III.   PARTIES

12. Defendant L&J Transportation Companies, Inc. is a Pennsylvania corporation headquartered in Pottstown, Pennsylvania. L&J does business in Pennsylvania, operates facilities in Pennsylvania, and is registered with the Pennsylvania Secretary of State. L&J provides delivery services to customers in Pennsylvania and across the United States.

13. L&J is subject to the provisions of the Pennsylvania deductions statute, 34 Pa. Code § 9.1, and are "employers" within the meaning of that statute.

14. L&J is a motor carrier that transports property in interstate commerce under authority issued by the United States Department of Transportation ("DOT"). L&J transports property in equipment leased by individual truck drivers, including Plaintiff.

15. Plaintiff Doryal Perry was, at all times relevant to this lawsuit, a citizen of North Carolina. Perry provided delivery services for L&J in the State of Pennsylvania as a delivery driver from approximately October 2023 to March 2024.

### IV.   FACTUAL BACKGROUND

#### A.   Facts Relevant to Plaintiff's Claims under Pennsylvania Law and the FLSA

16. Plaintiff was hired by Defendant to perform deliveries in Pennsylvania and adjoining states.

17. Plaintiff worked for Defendant full time, working seven days a week.

18. Plaintiff did not work for any other companies while working for Defendant.

3

19. Defendant exercised extensive control over the Plaintiff's and other similarly situated drivers' work, including the number of hours worked, the distance driven, and the deliveries performed by Plaintiff and other delivery drivers.

20. Plaintiff was required to regularly check in with Defendant's dispatchers to take their instructions as to which loads to haul, and where and when to pick up these loads. Plaintiff was not allowed to turn down loads assigned to him.

21. Plaintiff was also required to comply with Defendants' time constraints for deliveries and other instructions and was required to regularly report to L&J's staff and office in Pennsylvania.

22. L&J required the Plaintiff and all other delivery drivers to submit to mandatory drug testing and a background check in order to start working for L&J.

23. Plaintiff and other class members were required to pick up their trucks and trailers from L&J's yard in Pottstown, Pennsylvania.

24. Plaintiff and other class members were required to pick up and deliver freight for L&J in Pennsylvania, and received directions regarding their deliveries from Defendant's dispatchers and management team in Pennsylvania.

25. Defendant controlled every aspect of its drivers', including Plaintiff's, work. Such control included, but was not limited to the following:

   a. Defendant required Plaintiff and other similarly situated drivers to comply with instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiff's and other similarly situated drivers' duties.

    b. Plaintiff, as well as other similarly situated drivers, were required to report to or contact dispatchers employed by Defendant each day, at which time the Plaintiff and other similarly situated drivers were provided with delivery assignments.

    c. Defendant instructed Plaintiff and other similarly situated drivers which loads to pick up, the location of the loads/goods to be delivered, as well as the time frames for loading onto the equipment. Plaintiff and other similarly situated drivers had and have no discretion with respect to which loads they would pick up or deliver or when. Additionally, Defendant dictated the time by which each delivery must be made. Defendant's dispatchers and supervisors also communicated with Plaintiff and similarly situated drivers while they were driving via telephone in order to convey instructions and otherwise oversee the drivers.

    d. Plaintiff and other similarly situated drivers had GPS devices on their vehicles, which allowed Defendant to track the drivers throughout the day.

    e. Defendant required Plaintiff and other similarly situated drivers to undergo background checks and drug testing prior to beginning work.

    f. Defendant subjected drivers, including Plaintiff, to a variety of deductions, including, but not limited to, deductions for insurance coverage, truck and trailer payments, and tolls.

    g. If Plaintiff or other similarly situated drivers wished to take time off, Defendant required them to give timely advance notice, with the Plaintiff and other similarly situated drivers disciplined or terminated for failure to provide such notice.

26. Defendant required Plaintiff and putative class members to submit all bills of lading, logbooks, and other required paperwork to L&J's office in Pennsylvania.

27. At no time during their employment were Plaintiff and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers. Further, they could not choose and did not choose their own routes for delivery of cargo, could not and did not receive compensation or otherwise exchanged payment for their delivery other than being compensated by Defendant and could not and did not negotiate any matters or bargains with any customers or brokers.

28. Plaintiff was paid on a percentage-of-the-load basis for the deliveries he made.

29. Throughout the course of Plaintiff's work for L&J made deductions from his pay, which often came to thousands of dollars per week.

30. Plaintiff did not authorize these deductions.

31. For example, Defendant made deductions for truck lease payments, trailer payments, a reserve fund, fuel, tolls, and insurance, from Plaintiff's pay.

32. As a result of these deductions, there were a number of weeks in which Plaintiff's pay fell below minimum wage.

33. For example, in Plaintiff's final week of work for L&J, after the deductions L&J took from his compensation, Plaintiff was not paid anything.

**B.     Allegations Relating to Plaintiff's Truth-in-Leasing Claims**

34. L&J is a trucking company with authority granted by the DOT to transport property. It employs drivers to transport its customers' freight in interstate commerce.

35. L&J is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq.* and the TIL regulations.

36. L&J offers to lease equipment to individuals seeking to perform services as a driver. Those individuals who choose to lease equipment from Defendant are required to sign a Vehicle

Leasing Agreement with L&J. The Vehicle Leasing Agreement is a standard form agreement that Defendant presents to drivers on a take-it-or-leave it basis, without the opportunity to negotiate.

37.     When Plaintiff began work for J&J, he did not have his own truck. Consequently, in October 2023, he entered into a Vehicle Leasing Agreement with L&J.

38.     The Vehicle Leasing Agreement constitutes a "lease" within the meaning of the Truth-in-Leasing regulations, 49 C.F.R. § 376.29(e).

39.     Attachment D of the Vehicle Leasing Agreement states that the driver must maintain a reserve fund, and that the driver must make weekly payments into the reserve fund to maintain the required balance of $3,500.00.

40.     The amounts deducted and retained by L&J from drivers' compensation pursuant to Attachment D of the Vehicle Leasing Agreement constitute an "escrow fund" within the meaning of the TIL regulations, 29 C.F.R. § 376.2(l).

41.     L&J's Vehicle Leasing Agreements do not comply with TIL regulations pertaining to escrow funds because, among other things, they fail to sufficiently identify and describe the specific items to which the escrow fund can be applied.

42.     Additionally, L&J has failed to adhere to the TIL regulations concerning maintenance and accounting of drivers' escrow funds by failing to pay interest to the drivers on the balance of drivers' escrow funds on at least a quarterly basis.

43.     Under the TIL regulations, L&J was required to disclose in a written lease all expenses that it would "charge back" to the drivers.

44.     L&J made numerous deductions from drivers' pay that were not disclosed in the Vehicle Leasing Agreement. These included, in Mr. Perry's case, deductions for a hotel and "DT: follow up".

45. Under the TIL regulations, L&J was required to disclose in a written lease the amount that it would pay Perry and the other putative class members as compensation, and to specify that it would provide Perry and the other putative class members with a copy of the rated freight bills upon which their compensation was based, either before or at the time of settlement.

46. The Equipment Lease Agreement failed to disclose that L&J would provide a copy of the rated freight bills, and L&J failed to provide Perry and the other putative class members with a copy of the rated freight bills upon which their compensation was based.

47. L&J's deductions, chargebacks, withholdings, excess charges, and failure to comply with the TIL regulations have resulted in an improper windfall to L&J.

48. L&J's drivers have suffered harm and sustained damages from L&J's actions, including improper deductions from their pay and failing to adhere to the TIL regulations' requirements for handling escrow accounts.

**V.     CLASS ACTION ALLEGATIONS**

49. Plaintiff brings Counts I-II and IV of this lawsuit against Defendant as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following classes, for which Plaintiff seeks certification:

   a. For the Pennsylvania Minimum Wage Act and Pennsylvania Wage Payment and Collection Law claims, all current and former delivery drivers who provided delivery services for L&J in the state of Pennsylvania between April 14, 2021 and the present.

   b. For the Truth-in-Leasing claim, all current and former delivery drivers who provided delivery services for L&J subject to a lease agreement at any time between April 14, 2020 and the present.

50. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

51. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, the class is comprised of more than one hundred drivers.

52. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendant have misclassified drivers as independent contractors; whether Defendant has failed to pay drivers promised wages; whether Defendant has taken unlawful deductions from drivers' wages; and whether Defendant adhered to its obligations under the Truth-in-Leasing regulations.

53. The class claims asserted by Plaintiff are typical of the claims of potential class members. Defendant operates in a highly regulated industry that requires it to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers. Plaintiff's and class members' claims for unpaid wages and unlawful deductions should be readily calculable from Defendant's business records.

54. Plaintiff will fairly and adequately protect and represent the interests of the class. His interest in challenging the unlawful practices of Defendant motivates him to bring this case as a class action.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendant. Moreover, some class members particularly

current drivers may be reluctant to bring their claims individually for fear of retaliation by Defendant.

57. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by Pennsylvania law and the Truth-in- Leasing regulations to drivers, whose individual claims may be too small to warrant the expense of litigation.

57. This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

58. The contours of the class will be easily defined by reference to business records kept by Defendant.

## VI. COLLECTIVE ACTION ALLEGATIONS

59. Plaintiff brings Count III of this lawsuit as a collective action on behalf of all individuals who worked as delivery drivers for L&J between April 14, 2021 and the present and who may choose to opt-in to this case.

60. Plaintiff's FLSA claims should proceed as a collective action because all potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Defendant did not pay drivers at least the minimum wage for all hours worked, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

### COUNT I
### Violation of Pennsylvania Minimum Wage Act
### (Minimum Wage)

61. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

62. At all relevant times, Plaintiff and the proposed class members were "employees" of L&J under Pennsylvania law.

63. Plaintiff and other delivery drivers were not exempt under any of the provisions of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.105.

64. Defendant, through its policies and practices described above, willfully violated Pennsylvania Minimum Wage Act by failing to pay the Plaintiff and other members of the Rule 23 Class minimum wage for all hours worked, in violation of 43 P.S. § 333.104(a.1).

65. Plaintiff, on behalf of himself and the Rule 23 Class members, seeks damages in the amount of their unpaid earned compensation, including for amounts unlawfully deducted, plus attorneys' fees and costs, as provided by 43 P.S. §§ 333.113.

## COUNT II
### Violation of Pennsylvania Wage Payment and Collection Law
### (Deductions)

66. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

67. At all relevant times, Plaintiff and the proposed class members were "employees" of L&J under Pennsylvania law.

68. 43 P.S. § 260.3(a) provides that an employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer.

69. 34 Pa. Admin. Code § 9.1 prohibits employers from making deductions from wages except for those specifically enumerated in the regulation. For any deductions not enumerated, the employer must have received the written approval of the employee as well as authorization from the Pennsylvania Department of Labor.

70. Defendant, through its policies and practices described above, willfully violated Pennsylvania Wage Payment and Collection Law by making deductions from Plaintiff's and class members' wages in violation of 34 Pa. Admin. Code § 9.1 and 43 P.S. § 260.3(a), including, but not limited to, deductions for truck lease payments, trailer payments, a reserve fund, fuel, tolls, and insurance. As a result of these violations, Defendant failed to pay Plaintiff and class members all wages due as required by 43 P.S. § 260.3(a).

71. Defendant's actions, described above, were willful violations of the Pennsylvania Wage Payment and Collection Law, as Defendant knew or should have known that Plaintiff and other delivery drivers were employees of L&J under Pennsylvania law.

72. Plaintiff, on behalf of himself and the Rule 23 Class members, seeks damages for amounts unlawfully deducted, plus liquidated damages, as provided by 34 Pa. Admin. Code § 9.3, and 260.10, and attorneys' fees and costs as provided by 43 P.S. §260.9a.

## COUNT III
## Violation of Fair Labor Standards Act
### (Failure to Pay Minimum Wage)

73. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

74. After accounting for the deductions taken by Defendant from his pay, which amounted to hundreds of dollars per week, Defendant failed to pay Plaintiff and the members of the putative collective an hourly rate of at least the federal minimum wage of $7.25 per hour as required by the FLSA, 29 U.S.C. § 206(a).

75. Defendant's conduct in failing to ensure that its delivery drivers, with whom it has relied upon to perform a critical and integral component of its business services, receive the federal minimum wage, after accounting for the expenses they paid that were necessary to perform their job,

was knowing, willful, intentional, and done in bad faith.

76. This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT IV
## TRUTH-IN-LEASING CLAIMS

77. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

78. L&J is a motor carrier with operating authority granted to it by the DOT.

79. Under the Truth-in-Leasing regulations, an authorized carrier may perform authorized transportation using leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

80. As alleged, L&J has violated the TIL regulations by, inter alia, taking unspecified and excessive deductions from drivers' earnings; improperly maintaining drivers' escrow funds; making unlawful deductions from escrow funds; and by failing to include the contents, disclosures, and terms required by the TIL regulations in the drivers' lease agreements.

81. As a result of its failure to comply with the TIL regulations, Plaintiff and the putative class members are entitled to declaratory judgment that L&J's Equipment Lease Agreements violate 49 C.F.R. § 376.12.

82. As a result of its failure to comply with the TIL regulations, Plaintiff and the putative class members are entitled to enjoin L&J from attempting to enforce the Vehicle Leasing Agreements.

83. As a direct and proximate result of L&J's substantial and material failure to adhere to the TIL regulations, L&J has violated the rights of Plaintiff and the putative class members and

has caused Plaintiff and the putative class members economic damages in an amount to be determined at trial.

84. Plaintiff brings this claim pursuant to 49 U.S.C. § 14706(d).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

B. Appointing Plaintiff Doryal Perry as class representative and his counsel as class counsel;

C. An order enjoining Defendant from violating the Pennsylvania Wage Laws;

D. All unpaid wages;

E. Liquidated damages under the FLSA;

F. Restitution for all deductions taken from Plaintiff's and class members' wages;

G. An award to Plaintiff and the Rule 23 class of damages, statutory damages and penalties;

H. Requiring Defendant to provide each of the drivers an accounting of all transactions with L&J and provide all documentation necessary to confirm the validity of the computations;

I. A judgment against Defendant for all damages that the drivers incurred as a result of its violations of the Truth-in-Leasing regulations, including, but not limited to, restitution for all improper or excessive deductions, chargebacks, or withholdings; all amounts owed in interest on escrow funds, all escrow funds improperly withheld at termination; and other direct and proximate damages;

J. Pre-and post-judgment interest;

K. Attorneys' fees and costs, pursuant to the FLSA, Pennsylvania Wage Laws, and 49 U.S.C. § 14704(e);

L. Any other relief as this Court deems just and proper.

Dated: April 14, 2024

Respectfully Submitted,

**DORYAL PERRY,** individually and on behalf of all others similarly situated,

*Plaintiff*,

By his attorneys,

/s/ Sarah R. Schalman-Bergen

Sarah Schalman-Bergen
(PA Bar ID 206211)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (267) 256-9973
ssb@llrlaw.com


Harold L. Lichten (*pro hac vice anticipated*)
Olena Savytska (*pro hac vice anticipated*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Ravi Sattiraju (*pro hac vice anticipated*)
SATTIRAJU & THARNEY, LLP
50 Millstone Road
Building 300, Suite 202
East Windsor, NJ 08520
(609) 469-2110
rsattiraju@s-tlawfirm.com